July 17, 2026

**Supreme Court**

No. 2025-82-Appeal.
(P 20-5200)

Cassandra Constantino          :

v.          :

Zsolt Orban.          :

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Cassandra Constantino          :

v.          :

Zsolt Orban.          :

Present: Suttell, C.J., Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Justice Lynch Prata, for the Court.**  This case came before the Supreme

Court pursuant to an order directing the parties to appear and show cause why the

issues raised in this appeal should not be summarily decided.  In this divorce action,

the defendant, Dr. Zsolt Orban (Orban), appeals *pro se* from a Family Court decision

pending the entry of final judgment.  On appeal, Orban challenges both the trial

justice's distribution of assets and award of attorneys' fees to the plaintiff, Dr.

Cassandra Constantino (Constantino).  After considering the parties' written and oral

submissions and reviewing the record, we conclude that cause has not been shown

and that this appeal may be decided without further briefing or argument.  For the

reasons set forth herein, we affirm the decision of the Family Court.

**Facts and Travel**

This appeal arises from a protracted, fact-intensive, and bitterly contested

divorce.  We recite only those facts pertinent to the issues on appeal.  Orban and

- 1 -

Constantino married on February 28, 1997. The pair had two children.[1] Several years after they married, on December 14, 2020, Constantino filed for divorce citing irreconcilable differences that caused the irremediable breakdown of the marriage. In response, Orban filed an answer and counterclaim, also citing irreconcilable differences.

A trial commenced on February 14, 2022, during which Constantino was represented by counsel and Orban appeared *pro se*. Shortly thereafter, Orban obtained counsel and the parties reached a marital settlement agreement (MSA). The MSA resolved most issues, but left unresolved: (1) Orban's argument that certain nonmarital foreign property had been transmuted into marital assets; and (2) Constantino's claim for attorneys' fees.

On May 27, 2022, a decision pending entry of final judgment entered. The MSA was incorporated, but not merged, into the decision. The decision acknowledged that two issues remained to be resolved: (1) Orban's transmutation claim; and (2) Constantino's claim for attorneys' fees. Thereafter, on September 2, 2022, Orban's attorney moved to withdraw his appearance; that motion was subsequently granted. From that point on, Orban represented himself, and both

---

[1] Both children had reached the age of majority by the time the Family Court proceedings concluded.

parties submitted several motions and filings, the vast majority of which are not the subject of this appeal.

A year later, on September 12, 2023, the general magistrate issued a decision resolving the two issues left unresolved by the decision pending entry of final judgment. Addressing the transmutation of Constantino's inherited/gifted foreign assets, the magistrate acknowledged that the parties had agreed those assets were nonmarital, "consistent with the overwhelming uncontradicted evidence presented during the trial * * *." The magistrate rejected Orban's argument that because Constantino's ownership of those foreign assets had created a United States tax liability, which was satisfied partly out of marital funds, the property had been transmuted. The magistrate reasoned that merely reporting Constantino's foreign income, as required under the United States tax code, had not transmuted the property. The magistrate further held that there was no evidence that Constantino had ever "commingled funds traceable to her inherited assets with monies she derived from other sources" and that her foreign assets had "always remained totally segregated from joint marital assets." Moreover, the magistrate noted that Constantino had not "purchased, improved, or maintained any of her foreign real estate with domestic earnings," and that Orban's minimal contributions to the maintenance of those assets were gratuitous in nature. Accordingly, the magistrate

awarded Constantino all right, title, and interest in and to her nonmarital foreign assets, free and clear of any claim by Orban.

The magistrate then turned to the second unresolved issue, Constantino's claim for attorneys' fees. The magistrate agreed with Constantino's position that Orban had protracted the litigation by engaging in meritless arguments and filings. The magistrate also agreed that Orban's specious arguments regarding the foreign assets had caused a waste of both marital assets and Constantino's personal assets. The magistrate acknowledged that attorneys' fees in the context of a divorce action are generally "not punitive in nature and one basis for an award of attorney fees is to ensure that a spouse who lacks financial stability is able to secure competent representation." He then acknowledged that both Orban and Constantino had the means and assets from which to pay their own counsel fees.

However, citing multiple cases from this Court, the magistrate found that Orban had violated both Rule 11 of the Family Court Rules of Domestic Relations Procedure and G.L. 1956 § 9-29-21 "because of specious arguments and filings made for which there was no reasonable legal or factual basis during the pendency of this divorce." Specifically, the magistrate focused on Orban's transmutation argument, characterizing it as a "desperate attempt" to get a share of Constantino's nonmarital assets, assets that Orban had "full knowledge" Constantino owned solely. Orban's several theories, the magistrate reasoned, "lacked any reasonable factual

basis or merit under well-established [Rhode Island] law." The magistrate acknowledged that, while Orban had the right to proceed *pro se*, he nonetheless had failed to make a reasonable inquiry as to whether his positions were supported by sufficient evidence and had not made his claims in good faith. Moreover, the magistrate noted that Orban continued to proceed *pro se* despite multiple admonitions encouraging him to retain counsel, causing Constantino to incur substantial costs in responding to Orban's unsubstantiated claims. Ultimately, the magistrate awarded Constantino $74,680 to offset her fees and costs. Orban timely appealed the magistrate's decision to a justice of the Family Court.

On September 25, 2023, another hearing commenced, in which the magistrate stated that he was dealing with "a few clean-up issues." On November 2, 2023, the magistrate issued an order reflecting the contents of that hearing, during which he had calculated various offsets and credits due to the parties, including equal division of the parties' 2022 tax return and health insurance costs. Orban timely appealed that order to a justice of the Family Court. The trial justice ultimately upheld both the September 12 decision and the November 2 order.[2] The trial justice specifically

---

[2] The trial justice initially denied the appeal of the November 2 order, issuing an order which stated that the appeal "[was] defective in that it [did] not list the Order that [Orban] maintains he intended to appeal from * * *." Orban appealed from that decision, which appeal we treated as a common law writ of certiorari to address several procedural issues. In an order dated December 10, 2024, issued in Supreme Court Case No. 2024-52-Appeal, we concluded that the trial justice erred in denying Orban's appeal because, although he had listed the wrong date for the order he was

- 5 -

held that the magistrate had not "made any mistake in the application of law nor did he disregard any relevant and substantial facts that would bear on the decision nor did he fail to consider any relevant evidence that was presented at court." Accordingly, the trial justice denied Orban's appeals.

An amended decision pending entry of final judgment entered on February 21, 2025. The amended decision incorporated several prior proceedings, the magistrate's September 12 decision and November 2 order, and the MSA. The contents of the decision were consistent with the magistrate's previous findings and discussed in great detail the amounts owed by both parties. After all the calculations, Orban was ordered to pay Constantino $22,661.99, plus her half of the 2022 tax return, $11,158.50. The trial justice also awarded Constantino $74,680 in counsel fees. Orban timely appealed to this Court.[3]

**Standard of Review**

"This Court will not disturb findings of fact made by a trial justice or magistrate in a divorce action unless he or she has misconceived the relevant evidence or was otherwise clearly wrong." *Cronan v. Cronan*, 307 A.3d 183, 194

---

appealing, his intent was clear and there was no actual confusion as to what he was appealing. We also urged the Family Court to put an end to the protracted litigation. The case was thus remanded, and the appeal was ultimately denied on the merits.

[3] On December 18, 2025, this Court remanded the matter to the Family Court for entry of final judgment. Final judgment entered the next day, granting the parties an absolute divorce but leaving open all other matters pending appeal to this Court.

(R.I. 2024) (quoting *Sullivan v. Sullivan*, 249 A.3d 637, 641 (R.I. 2021)). "Consequently, unless it is shown that the trial justice either improperly exercised his or her discretion or that there was an abuse thereof, this Court will not disturb the trial justice's findings." *Smith v. Smith*, 252 A.3d 246, 248 (R.I. 2021) (mem.) (quoting *Vieira v. Hussein-Vieira*, 150 A.3d 611, 615 (R.I. 2016)). "Questions of law in an appeal from the Family Court, however, are reviewed *de novo*." *Id.* (quoting *Vieira*, 150 A.3d at 615-16).

As for attorneys' fees, "[a] trial justice presiding in a divorce proceeding acts within the limits of judicial discretion in fixing the amount of attorney's fees and, absent judicial abuse, this [C]ourt will not review the exercise of such discretion." *Koutroumanos v. Tzeremes*, 865 A.2d 1091, 1101 (R.I. 2005) (quoting *Becker v. Perkins-Becker*, 669 A.2d 524, 529 (R.I. 1996)). "[T]he issue of whether there exists a basis for awarding attorneys' fees generally is legal in nature, and therefore our review of such a ruling is *de novo*." *McCollum v. McCollum*, 287 A.3d 26, 31 (R.I. 2023) (emphasis omitted) (quoting *America Condominium Association, Inc. v. Mardo*, 140 A.3d 106, 115 (R.I. 2016)).

**Discussion**

Orban's appeal is twofold. Orban primarily contests (1) the distribution of several assets and (2) the award of attorneys' fees.

**Equitable Distribution**

"It is well settled in this jurisdiction that trial justices responsible for equitably distributing property in a divorce action must engage in a three-step process." *Shramek v. Shramek*, 901 A.2d 593, 598 (R.I. 2006) (quoting *Horton v. Horton*, 891 A.2d 885, 889 (R.I. 2006)). "The trial justice must '(1) determine which assets are marital property; (2) consider the factors set forth in G.L. 1956 § 15-5-16.1(a); and (3) distribute the property.'" *DiDonato v. DiDonato*, 295 A.3d 828, 834 (R.I. 2023) (brackets omitted) (quoting *Saltzman v. Saltzman*, 218 A.3d 551, 561 (R.I. 2019)).

Before this Court, Orban challenges the trial justice's equitable distribution of: (1) Constantino's foreign property; (2) healthcare premiums; and (3) the parties' 2022 tax returns. We discuss each *seriatim*.

**Foreign Property**

On appeal, Orban argues that the trial justice erred in classifying Constantino's foreign assets as separate property. Orban contends that translated purchase and sales agreements for eight foreign properties evidence that the acquisitions were "*bona fide* purchases subject to sales tax not due on gifts/inheritance." Moreover, Orban asserts that the parties reported the foreign

- 8 -

income generated by those properties on their joint tax returns and that taxes and expenses related to that income were paid from joint accounts, thus transmuting the properties into the marital estate. Orban also contends that the foreign property caused marital losses in excess of $200,000.

In response, Constantino argues that the deeds for the foreign properties were not executed for consideration based on the property's market value, but rather to satisfy nominal tax obligations required by Brazilian law. Constantino contends that uncontroverted evidence presented at trial established that no United States income was used to maintain Constantino's foreign property. Moreover, Constantino argues that joint tax filing does not automatically transmute separate property into marital property, and that any resultant tax burden was calculated and repaid.

Some types of property are statutorily deemed nonmarital, including "property or an interest in property which has been transferred to one of the parties by inheritance before, during, or after the term of the marriage." Section 15-5-16.1(b). However, under the doctrine of transmutation, "property can be converted from nonmarital property into marital property if changed in form and put into joint names." *Wu-Carter v. Carter*, 179 A.3d 711, 721 (R.I. 2018) (quoting *Stephenson v. Stephenson*, 811 A.2d 1138, 1142 (R.I. 2002)). The transmutation of nonmarital assets occurs when "an actual intention to do so is objectively manifested." *Shramek*, 901 A.2d at 600.

Here, the record is replete with evidence that Constantino's foreign property remained separate throughout the entirety of the parties' marriage. Orban's attempt to convince us otherwise is without merit. The record is devoid of any basis upon which we could conceivably conclude that Constantino manifested an objective intent to convert her foreign assets into marital property. *See Stephenson*, 811 A.2d at 1142-43 (noting the trial justice's finding that although husband had added wife's name to his bank account he did not "have the requisite intent to create for [wife] any present possessory interest in the joint accounts"). Rather, the record establishes that Constantino kept all income stemming from her foreign property separate and paid any related costs from those separate funds. *See Hurley v. Hurley*, 610 A.2d 80, 84 (R.I. 1992) (rejecting husband's transmutation argument because the property at issue "was purchased with inheritance money and held solely by the wife"). Moreover, as the trial court ruled, Orban's minimal involvement in upkeep of the foreign properties did not amount to any substantial contribution of marital effort. *See id.* at 83 (holding that despite husband's renovations and repairs to real property owned by wife's mother, the property had not been transmuted because "the husband intended his services to be gratuitous"). Accordingly, the trial justice did not abuse his discretion in determining that Constantino's foreign assets were nonmarital property.

## 2022 Tax Return

Orban contends that, because Constantino underpaid $6,039 in federal tax for 2022 whereas he overpaid $18,171, the trial court erred in ordering equal division of that year's tax return. Specifically, Orban contends that the trial court ignored Constantino's $60,000 of unshared income for that year and failed to consider the overpayments and underpayments in violation of the MSA. Constantino contends that Orban fails to consider or refute the court's justifications for the equitable division of the tax return. We reject Orban's contentions and agree with Constantino.

Despite characterizing the trial court's ruling as "legally flawed," Orban does not point us to any legal support for his argument that the trial court erred in splitting the 2022 tax return evenly. Rather, as he did below, Orban relies on his interpretation of the MSA and the mere fact that he overpaid while Constantino underpaid for the 2022 tax year. At the September 25, 2023 hearing, the magistrate rejected that argument, explaining that regardless of any overpayment or underpayment on domestic income in 2022, the entire family subsequently benefitted from the 2022 tax return. The trial justice affirmed that decision, denying Orban's appeal and ordering equal division of the tax return in the amended decision pending entry of final judgment. We discern no error.

Paragraph 11 of the MSA states that "[t]he parties shall share equally (50/50) any refund received, if there is an amount owed, the party whose income caused the deficiency should be responsible for the liability." As the magistrate found and the trial justice affirmed, that paragraph does not contemplate who underpaid or overpaid domestic taxes. There was no deficiency owed and the family received a substantial refund, from which they all benefitted, including Orban. The magistrate's findings are supported by the record, and he acted well within his discretion in ordering the equal division of the 2022 tax return.

## Health Insurance Costs

Orban contends that the trial court erred in ordering him to pay a portion of the family's health insurance premiums including coverage costs for the parties' two adult children. Orban contends that the trial court's mandate is contrary to the parties' MSA, legally unsupported, and constitutes "*de facto* grown adult child support" in excess of the Family Court's jurisdiction. Orban also alleges that Constantino derived an undisclosed tax advantage from her employer-sponsored plan which reduced her out-of-pocket costs. In response, Constantino contends that Orban fails to refute the trial court's justifications for mandating that the parties' split health insurance costs, namely that Constantino's employer only offered family or individual plans, necessitating a family plan to cover Orban. Moreover, Constantino points out that Orban originally argued the cost of the plan should be

split four ways, and that he would pay Constantino twenty-five percent, his individual share of the cost.

Paragraph 10 of the MSA mandates that Constantino maintain Orban on her health insurance plan "until such time as the Final Judgment enters, or 120 days from the date of the nominal hearing on the merits, whichever occurs sooner." After that time, under the MSA, each party would be solely responsible for their respective healthcare costs. The magistrate determined that for the relevant time Orban and Constantino would split the cost of the family plan evenly. Specifically, the magistrate explained that, consistent with the MSA and a prior court order, he would not prorate or offset the cost of the health insurance. The magistrate's order to that effect was affirmed by the trial justice and reflected in the amended decision pending entry of final judgment.

We perceive no error in the trial court's determination. Under the MSA, Constantino was required to maintain insurance coverage for Orban, and the only plan available through her employer was a family plan, for which the parties' two adult children were eligible. There was a cost for the family plan, whether it covered only the parties or the parties and their adult children. The inclusion of the adult children on the insurance policy created no additional cost to the parties. The MSA did not specify how the total cost of that plan would be split between the parties.

Therefore, we cannot say that the magistrate erred in splitting the cost of the plan evenly.

**Attorneys' Fees**

Orban argues that the trial court had no statutory basis and made no findings to support an award of counsel fees to Constantino. Orban contends that the magistrate overlooked Constantino's greater financial resources, which in his view did not demonstrate a need for legal fees. In response, Constantino argues that Orban disregards the factors the trial court considered in awarding attorneys' fees, particularly the impact of Orban's conduct throughout the divorce proceedings. Constantino contends that Orban repeatedly violated court rules and consistently pursued unsupported legal issues, despite multiple warnings and admonitions.

Both Rule 11 of the Family Court Rules of Domestic Relations Procedure and § 9-29-21 provide for attorneys' fees as a sanction for frivolous or bad faith pleadings or motions and arguments. *See* R. Dom. Rel. P. 11; § 9-29-21. "Under Rule 11, trial courts have 'broad authority to impose sanctions for advancing claims without proper foundation.'" *Smith v. Smith*, 207 A.3d 447, 451 (R.I. 2019) (brackets and deletion omitted) (quoting *Michalopoulos v. C & D Restaurant, Inc.*, 847 A.2d 294, 300 (R.I. 2004)).

The trial justice made several findings of fact in support of awarding attorneys' fees, specifically he found that:

"16. Husband has violated both Rule 11 and § 9-29-21 because of specious arguments and filings made for which there was no reasonable legal or factual basis during the pendency of this divorce;

"17. Husband did not make any reasonable inquiry about the nature of or language used in Brazilian transfer deeds, and to the contrary, it was clear to the [c]ourt from the evidence presented that Wife's Counsel did;

"18. Husband's position ignored § 15-5-16.1 and the well-established law set out in the holding of *Hurley*, and thus lacked any reasonable factual basis or merit under well-established R.I. law;

"19. The extended and protracted litigation was due solely to Husband's personal belief that it was unfair to him that Wife had a large inheritance from her parents and she was unwilling to share it with him, regardless of whether he had a reasonable legal or factual basis to assert his claim;

"20. The counsel fees sought were reasonable and necessary for the volume, nature, and complexity of the work performed[.]"

Orban contends that the trial justice failed to make the "threshold determination" that Constantino lacked sufficient funds to pay legal fees. It is true that "[g]enerally, in a divorce matter, 'an award of attorney's fees is not punitive in nature but serves to ensure that a spouse who lacks financial stability is still able to secure competent representation in the divorce proceeding.'" *McCulloch v. McCulloch*, 69 A.3d 810, 826 (R.I. 2013) (brackets omitted) (quoting *Thompson v. Thompson*, 642 A.2d 1160, 1165 (R.I. 1994)). Here, however, the trial justice awarded counsel fees based on Rule 11 and § 9-29-21, rather than § 15-5-16, and

- 15 -

was therefore not required to first find that Constantino lacked financial stability before awarding counsel fees. Even so, the trial court did consider Constantino's financial stability, expressly acknowledging that Constantino possessed the means and assets to pay her own counsel fees. Nevertheless, the trial court found that Orban's conduct rose to such a level that counsel fees were warranted under Rule 11 and § 9-29-21. We perceive no abuse of authority in that determination. *See Smith*, 207 A.3d at 451 (upholding an award of attorneys' fees under Rule 11 where husband "acted in bad faith with the purpose and intent to harass the plaintiff and filed numerous frivolous motions that forced the plaintiff to incur additional legal fees"); *Cunningham v. Cunningham*, 337 A.3d 1029, 1034-35 (R.I. 2025) (affirming an award of attorneys' fees under Rule 11 where husband "knew or should have known that his [motion] * * * was not 'well grounded in fact' and was not 'warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law'") (quoting R. Dom. Rel. P. 11).

The trial court oversaw years of contentious proceedings and over those years heard Orban's repetitive and unsupported legal arguments. Orban alone caused the protracted litigation and in turn caused Constantino to incur significant additional legal fees. Accordingly, we discern no abuse of discretion in granting Constantino's request for attorneys' fees.

- 16 -

## Conclusion

For the reasons set forth herein, we affirm the decision of the Family Court and remand the papers to that tribunal.



# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Cassandra Constantino v. Zsolt Orban. |
| **Case Number** | No. 2025-82-Appeal. <br> (P 20-5200) |
| **Date Opinion Filed** | July 17, 2026 |
| **Justices** | Suttell, C.J., Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Erin Lynch Prata |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Merola |
| **Attorney(s) on Appeal** | For Plaintiff: <br><br> Timothy J. Conlon, Esq. |
| | For Defendant: <br><br> Zsolt Orban, *pro se* |